Filed 6/16/21  P. v. Miller CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>HARRY WILLIAM MILLER,<br><br>        Defendant and Appellant. | A158431<br><br>(Mendocino County<br>Super. Ct. No. SCUK-CRCR-18-93826) |

On March 26, 2018, while engaged in a verbal dispute with his neighbors over a shared driveway, defendant Harry William Miller shot one victim in the stomach and shot at but did not hit the other victim. Pursuant to a negotiated disposition, defendant pled guilty to one count of attempted voluntary manslaughter and one count of assault with a deadly weapon and admitted the related firearm enhancements. Consistent with the terms of his plea bargain, defendant was sentenced to 11 years 10 months in prison. On appeal, defendant contends the court erred by failing to consider defendant's military-related posttraumatic stress disorder (PTSD) as a mitigating factor in sentencing as required by Penal Code[1] sections 1170.9 and 1170.91. We find no prejudicial error and shall affirm the judgment.[2]

---

[1] All statutory references are to the Penal Code.

[2] Defendant has filed a habeas petition (A161385) asserting that if his trial attorney failed to properly raise and preserve this issue for appeal, that omission constitutes ineffective assistance of counsel. We shall resolve that petition by order filed concurrently with this opinion.

1

## Background

Defendant was charged with two counts of attempted first degree murder (§§ 664, 187, subd. (a)), while personally using a firearm (§ 12022.53, subd. (c)). Defendant's wife was charged in the same information with being an accessory to attempted murder (§ 32.)

During jury selection, criminal proceedings against defendant were suspended (§§ 1368, 1370). During the suspension, defendant's wife was convicted in a jury trial and placed on probation. Her conviction was affirmed by this court on December 24, 2020. (*People v. Miller* (Dec. 24, 2020, A158166) [nonpub. opn.].)

Following reinstatement of the criminal proceedings against defendant, he pled guilty to one count of attempted voluntary manslaughter (§§ 664, 192, subd. (a)), and one count of assault with a firearm (§ 245, subd. (a)(2)), and he admitted firearm use (§ 12022.5, subd. (a)) as to both counts. Defendant was advised that the aggregate maximum term of imprisonment under his plea was 17 years 10 months.

In advance of the sentencing hearing, defendant submitted a brief arguing that while he was presumptively ineligible for probation under section 1203, subdivision (e), the interest of justice would be served by a grant of probation based on the unusual circumstances of this case. Defendant acknowledged that the shooting of his neighbor was not justified and was not a lawful act of self-defense. He argued, however, that the shooting should be viewed as an isolated incident of aberrant behavior in the context of an ongoing dispute between neighbors, including an incident just over a year before the shooting during which the neighbor pushed defendant to the ground, severely injuring his back. Defendant noted that he was 69 years old at the time of the shooting incident and that he is currently in poor health. He has been happily married for 37 years and has two adult children, all of whom would be adversely affected by a sentence of imprisonment. He has no prior criminal history. He served in the Navy for three years and was honorably discharged. He then worked as a fireman for many years before being promoted to fire captain, a position he occupied until his retirement. He also argued that at the time of the shooting, due to the ongoing dispute with the neighbors, he and his wife

2

lived in constant fear. Defendant submitted a report prepared by a neuropsychologist who had evaluated defendant and opined that "he has a history of exposure to significant traumas as his position as a firefighter, which led to symptoms of PTSD prior to the instant offense. This made him vulnerable for the development of clinically significant PTSD in response to his interactions with [his neighbor]. After the January 2017 assault, [defendant] developed increasing PTSD symptoms, including general anxiety, avoidance, hypervigilance, and negative cognitions/emotions. PTSD symptoms have increased over time based on comparison of measures from 2018 until now. It is this evaluator's opinion that [defendant] was triggered into 'flight-or-fight' mode by the events leading up to the instant offense."

At the hearing, defense counsel argued that defendant was suffering from PTSD, evidenced by his inability to recall the shooting part of the current incident, which should be considered a mitigating circumstance that severely reduced defendant's culpability. Counsel reiterated that defendant had been diagnosed as suffering from PTSD "due to his background as a firefighter and a first responder and the physical assault that took place in 2017 and all of the events that led up to it."

The prosecutor argued that the serious nature of defendant's crimes warranted imposition of a significant prison term.

The court denied probation and sentenced defendant to a prison term of 11 years 10 months.[3] The court explained, "I think that it's fair to say that anyone watching [the video of the shooting] is going to form the opinion that the use of the gun in the manner in which it was used under the circumstances of the discussion that was ongoing at the time the gun was used was nothing short of shocking. . . . [¶] Even though, when I watched the video, I knew the shot was coming. . . . I personally had a visceral reaction to it, and I think anybody watching it would." Addressing the facts and circumstances of the

---

[3] On count 1, attempted voluntary manslaughter, the court imposed the aggravated term of five years six months, and imposed the midterm of four years for the firearm use enhancement. On count 2, assault with a deadly weapon, the court imposed one year for the offense and an additional four months for the firearm use enhancement.

3

crime, the court stated "it's hard to picture a more serious version of the crime. . . . [Defendant] leans forward and shoots the neighbor in the gut at a can't-miss range. The neighbor is not armed. The neighbor is not approaching [defendant] or . . . physically threatening him in any way at that time." The court also considered that the defendant inflicted substantial physical and emotional injury noting that it's "miraculous" that the victim survived. The court rejected the suggestion that the crime was justified by "great provocation" based on the prior incidents between the neighbors. Finally, considering the factors related to defendant, the court noted that "most of [defendant's] life, he's done good things. I recognize that he's a Navy veteran, he was a fire captain, and he has some pretty good community support."

Defendant filed a timely notice of appeal.

## Discussion

Pursuant to sections 1170.9 and 1170.91, the trial court is required "to consider a criminal defendant's qualifying service-related conditions as mitigating circumstances in making discretionary sentencing choices." (*People v. Panozo* (2021) 59 Cal.App.5th 825, 831.) Under section 1170.9, subdivision (a), "In the case of any person convicted of a criminal offense who could otherwise be sentenced to county jail or state prison and who alleges that the person committed the offense as a result of . . . [PTSD] . . . stemming from service in the United States military, the court shall, prior to sentencing, make a determination as to whether the defendant was, or currently is, a member of the United States military and whether the defendant may be suffering from . . . [PTSD] . . . as a result of his or her service." Under subdivision (b)(1), "If the court concludes that a defendant convicted of a criminal offense is a person described in subdivision (a), and if the defendant is otherwise eligible for probation, the court shall consider the circumstances described in subdivision (a) as a factor in favor of granting probation." Section 1170.91, subdivision (a) requires further, "If the court concludes that a defendant convicted of a felony offense is, or was, a member of the United States military who may be suffering from . . . [PTSD] . . . as a result of his or her military service, the court shall

4

consider the circumstance as a factor in mitigation when imposing a term under subdivision (b) of Section 1170." [4]

In *People v. Panozo, supra*, 59 Cal.App.5th at page 836, the court noted that sections 1170.9 and 1170.91 "speak in terms that are mandatory rather than permissive" and thus "unambiguously obligate" a sentencing court to consider a defendant's service-related PTSD in making discretionary sentencing choices. In that case, the court noted that "Panozo's sentencing brief asked for probation, referenced his service-related PTSD, and provided documentation to support his diagnosis and request for treatment. And defense counsel argued extensively at sentencing that his client's crimes were the byproduct of his military service, warranting probation or imposition of the lower term." (*Id*. at pp. 837-838.) The court noted, however, that while the court "was plainly aware that Panozo served in Iraq, struggled with PTSD and alcohol use, and requested probation and treatment through Veterans Court," there is no indication the court understood its obligation to consider that fact as a circumstance in mitigation when making discretionary sentencing choices. (*Id*. at p. 838.) Accordingly, the court concluded that the matter must be remanded for resenting because "a court's compliance with the mandates of sections 1170.9 and 1170.91 cannot be inferred from an ambiguous record." (*Id*. at pp. 836-837.)[5]

---

[4] Counsel's suggestion that defendant's service-connected hearing loss qualifies as a mitigating circumstance under the above statutes is misplaced. Hearing loss is not a "mental health problem" as required by the statutes. (See § 1170.9 [statute applies to defendant who "committed the offense as a result of sexual trauma, traumatic brain injury, [PTSD], substance abuse, or mental health problems stemming from service in the United States military"]; § 1170.91 [statute applies to defendant who "is, or was, a member of the United States military who may be suffering from sexual trauma, traumatic brain injury, [PTSD], substance abuse, or mental health problems as a result of his or her military service." (§§ 1170.9, 1170.91.) Moreover, there is no apparent causal relationship between defendant's hearing loss and his commission of the offense.

[5] As relevant here, the *Panozo* court also held that defendant had not forfeited his claim on appeal by failing to object at the sentencing hearing. (*People v. Panozo, supra*, 59 Cal.App.5th at p. 840.) The court explained that the forfeiture rule is inapplicable

The record in this case contains no evidence demonstrating that defendant's PTSD was related to his military service in any way. To the contrary, defendant argued in his sentencing brief and at the hearing that defendant suffered from PTSD caused initially by his years as a firefighter and first responder and aggravated by the escalating dispute between defendant and his neighbors. Thus, the record is insufficient to trigger the court's obligations under section 1170.9 and 1170.91.

In any event, even assuming that the court had an obligation to determine whether defendant's military service contributed to his PTSD and if so, consider that as a mitigating factor, any failure to do so was undoubtedly harmless. (See *People v. King* (2020) 52 Cal.App.5th 783, 790 [failure to comply with procedural requirements of section 1170.91 is subject to "miscarriage of justice" standard and sentence should be reversed only when it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error]; *People v. McDaniels* (2018) 22 Cal.App.5th 420, 425 ["[I]f ' "the record shows that the trial court would not have exercised its discretion even if it believed it could do so, then remand would be an idle act and is not required." ' "].)[6] Here, the court considered and rejected defendant's

where defendant's claim is that the court misapprehended its discretion, not a challenge to how it exercised that discretion. (*Ibid*.)

[6] Contrary to defendant's argument, the court's failure to comply with sections 1170.9 and 1170.91 does not require resentencing without a showing of prejudice. Section 1170.91, subdivision (b), cited by defendant, provides the procedure for a petition for resentencing pursuant to subdivision (a) if defendant was sentenced prior to the enactment of the statute in 2015. That procedure is not applicable where defendant was sentenced after 2015. (*People v. Valliant* (2020) 55 Cal.App.5th 903 [denial of relief under section 1170.91, subdivision (b) to defendant sentenced after 2015 did not violate defendant's due process or equal protection rights].) *People v. Bonilla-Bray* (2020) 49 Cal.App.5th 234, 237-239, cited by defendant, is also not applicable. In that case, the court reversed the summary denial of a petition for resentencing under section 1170.91, subdivision (b) and remanded for a hearing after concluding that the defendant's petition satisfied the statutory requirements for relief. The court did not directly or indirectly address prejudice. (See *Elisa B. v. Superior Court* (2005) 37 Cal.4th 108, 118 [" 'an opinion is not authority for a proposition not therein considered' "].)

6

argument that his PTSD supported a grant of probation or a mitigated term. The court did not question the showing that defendant suffers from PTSD, albeit from a different source, but felt that under the circumstances of the crime this factor did not justify probation or a lesser prison term. Given the court's careful recitation of the factors in aggravation and mitigation, it is not reasonably probable that if the court had considered defendant's military service to have contributed to his PTSD it would have imposed a more favorable sentence.

## Disposition

The judgment is affirmed.


POLLAK, P. J.

WE CONCUR:

TUCHER, J.
BROWN, J.

7